UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH RUBALCABA,<br><br>               Plaintiff,<br><br>     v.<br><br>R&L CARRIERS SHARED SERVICES,<br>L.L.C.,<br><br>               Defendant. | Case No. 23-cv-06581-HSG<br><br>**ORDER DENYING PLAINTIFF'S<br>MOTION TO REMAND, GRANTING<br>DEFENDANT'S MOTION TO<br>DISMISS, AND GRANTING<br>DEFENDANT'S REQUEST FOR<br>JUDICIAL NOTICE**<br><br>Re: Dkt. Nos. 33, 37, 38 |

Pending before the Court are Plaintiff's motion to remand and Defendant's motion to dismiss. Dkt. Nos. 33, 37. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons discussed below, the Court **DENIES** Plaintiff's motion to remand, **GRANTS** Defendant's motion to dismiss, and **GRANTS** Defendant's request for judicial notice.

## I.   BACKGROUND

Plaintiff Joseph Rubalcaba ("Plaintiff") originally filed this putative class action case against R&L Carriers Shared Services L.L.C. ("Defendant" or "R&L") in Santa Clara County Superior Court on October 6, 2023. *See* Dkt. No 1-1. On December 21, 2023, Defendant removed the complaint to federal court. *See* Dkt. No. 1 ("Removal Notice"). In the Notice of Removal, Defendant cites the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), as the basis for this Court's jurisdiction, and argues that CAFA jurisdiction is present because, based on the allegations, (1) the proposed class is larger than 100 members (and actually numbers more than 2,000), (2) minimal diversity is present because Plaintiff is a California citizen and Defendant is not, and (3) the amount in controversy exceeds five million dollars based on Plaintiff's meal and

rest break claims alone.  Removal Notice ¶¶ 9–34.

On January 9, 2024, Defendant filed a motion to dismiss.  Dkt. No. 26.  However, that motion was mooted when, on January 19, 2024, Plaintiff filed an amended class action complaint.  Dkt. No. 31 ("AC.").  Much like the original, the Amended Complaint ("AC") alleges that Defendant committed a variety of labor violations against Plaintiff and other similarly situated individuals in its employ.  AC ¶¶ 17–50.  In his complaint, Plaintiff seeks to represent a class comprised of "all current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from April 11, 2019, to final judgment and who reside in California," *see* AC ¶ 13 (also defining two subclasses), and asserts ten causes of action under California state law for Defendant's failure to (1) pay overtime compensation (in violation of Labor Code sections 510 and 1198); (2) pay meal period premiums (in violation of Labor Code sections 226.7 and 512(a)); (3) pay rest period premiums (in violation of Labor Code section 226.7); (4) pay minimum wages (in violation of Labor Code sections 1194, 1197, and 1197.1); (5) pay wages upon ending employment (in violation of sections 201 and 202); (6) pay timely wages during employment (in violation of Labor Code section 204); (7) provide accurate wage statements (in violation of Labor Code section 226(a)); (8) keep requisite payroll records (in violation of a Labor Code section 1174(d)); (9) indemnify necessary business expenses (in violation of Labor Code sections 2800 and 2802); and (10) its consequent unfair competition practices (in violation of Business & Profession Code 17200, et seq).  AC ¶¶ 51–121.

The day after filing his AC, Plaintiff filed a motion to remand, arguing that CAFA did not provide a basis for federal jurisdiction.  Dkt. No. 33 ("MTR").  The motion focused on Defendant's alleged failure in the Notice of Removal to establish its principal place of business (and therefore minimal diversity) or the necessary amount in controversy (i.e. $5 million).  *See id*.  Defendant opposed the motion, Dkt. No. 40 ("MTR Opp."), and Plaintiff replied, Dkt. No. 41 ("MTR Reply").  Meanwhile, Defendant filed a motion to dismiss on February 1, arguing that Plaintiff's complaint should be dismissed in its entirety for failure to plead sufficient facts in support of his claims.  Dkt. No. 37 ("MTD").  Plaintiff opposed, Dkt. No. 42 ("MTD Opp."), and Defendant replied, Dkt. No. 43 ("MTD Reply").  Both motions are now ready for disposition.

## II.    MOTION TO REMAND

### A.    Legal Standard

A defendant may remove any civil action to federal court where the district court would have original jurisdiction over the action.  28 U.S.C. § 1441; *see also Caterpillar, Inc. v. Williams*, 482 U.S. 286, 392 (1987).  To do so, a party seeking removal must file a notice of removal within 30 days of receiving the initial pleading or within 30 days of receiving "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(b)(1), (3).  The notice must contain a "short and plain statement of the grounds for removal."  *Id*. § 1446(a); *see also Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015).

The removing party bears the burden of establishing removal jurisdiction, even in a case removed pursuant to CAFA.  *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683–85 (9th Cir. 2006) ("[U]nder CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction.").  CAFA vests the district courts with original jurisdiction over civil actions in which the amount in controversy exceeds $5 million, there is minimal diversity of citizenship between the parties, and the action involves at least 100 class members.  28 U.S.C. § 1332(d).  Under CAFA, "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000."  *Id*. § 1332(d)(6).

A plaintiff may seek to remand a case to the state court from which it was removed if the district court lacks jurisdiction or if there was a defect in the removal procedure.  28 U.S.C. § 1447(c).  However, there is no anti-removal presumption in cases invoking CAFA.[1]  *Dart Cherokee Bain Operating, Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

### B.    Discussion

Plaintiff argues in his motion for remand that Defendant has not established removability

---

[1] Plaintiff's opening brief flatly mischaracterizes this basic rule.  *See* MTR at 7 (incorrectly asserting that the Court must "construe[] the CAFA statute *against* removal jurisdiction") (emphasis in original).

United States District Court
Northern District of California

under CAFA.  Specifically, Plaintiff argues that Defendant falls short on two of CAFA's three requirements: minimal diversity and the amount in controversy.  After carefully considering Defendant's Notice of Removal and its supplemental filings, the Court concludes that Defendant has adequately established CAFA jurisdiction.

### i.    Minimal Diversity

Plaintiff first argues that Defendant has not established minimal diversity, which requires that just a single plaintiff be a citizen of a different state from any single defendant.  MTR at 10–11.  The Court disagrees.

The parties concur that half of the equation is clear: Plaintiff, as well as the class he seeks to represent, are California citizens.  AC ¶ 5.  Plaintiff, however, argues that the other half of the equation – Defendant's citizenship – is murkier.  Though Plaintiff concedes that Defendant is incorporated in Ohio, AC ¶ 6, Plaintiff argues that the Notice of Removal "does not address . . . the location of [R&L's] principal place of business."  MTR at 10.  Plaintiff is correct that this is the key fact: this Court has held that for purposes of CAFA jurisdiction, the citizenship of an LLC is determined by where its principal place of business, or "nerve center," is located.  *See Jack v. Ring LLC*, 553 F. Supp. 3d 711, 715 (N.D. Cal. 2021).  This is generally a corporation's headquarters, or the place where "a corporation's officers direct, control, and coordinate the corporation's activities."  *Hertz v Corp. v. Friend*, 559 U.S. 77, 92–93 (2010).  In its motion, Plaintiff does not argue that diversity is destroyed because *California* is Defendant's principal place of business, but rather claims that Defendant has not done enough to identify where its nerve center actually is.

It is true that in the Notice of Removal itself, Defendant focuses on the citizenship of its members, which is germane to the citizenship test for LLCs in traditional diversity cases, but not dispositive in CAFA cases, which focus on a defendant's principal place of business.  Namely, Defendant argues that based on its constituent members' citizenships, R&L is deemed to be a citizen of Ohio, South Carolina and Florida, and is minimally diverse from Plaintiff and the putative class.  *Id*. ¶ 16.  To support that argument, Defendant lists the states of incorporation and the principal place of business for each of its six member entities (R+L Carriers, Inc., R&L

4

United States District Court
Northern District of California

1  Paramount Transportation Systems, Inc., R.L.R. Investments, LLC, R&L Transfer, Inc.,

2  Greenwood Motor Lines, Inc., Gator Freightways, Inc.), as well as the citizenship of the

3  individuals who own the one LLC member (R.L.R. Investments, LLC).  Removal Notice ¶ 14, 15.

4  The listed states include Ohio, North Carolina, and Florida.  *Id.*

5  　　　　While the Notice of Removal concededly focuses on the citizenship of Defendant's

6  members, it does not stand alone.  It is accompanied by evidentiary submissions, which even

7  Plaintiff admits contain "statements that might feasibly pertain to Defendant's principal place of

8  business."  MTR at 11.  The most relevant of the accompanying submissions is the Declaration of

9  Daniel J. Brake, R&L's Vice President and Associate General Counsel.  *See* Dkt. No. 1-2, Ex. 2

10  ("Brake Decl.").  In his Declaration, Brake identifies Defendant's principal place of business as

11  Wilmington, Ohio, Brake Decl. ¶ 3, and attests that (1) R&L's administrative functions including

12  but not limited to human resources, safety, sales, quality control, and partner relations, all take

13  place primarily out of its Wilmington, Ohio headquarters (*id.*, ¶ 3); (2) R&L's highest-level

14  corporate executives are employed by Strategic Management, L.L.C., which at the time of the

15  filing of the Complaint and Notice of Removal, was an entity incorporated in the State of Ohio,

16  with its principal place of business located in Wilmington, Ohio (*id.*); (3) most of R&L's other

17  managers are employed by R&L Carriers Payroll, L.L.C. (solely owned by R&L), which at the

18  time of the filing of the Complaint and Notice of Removal, was an entity incorporated in Ohio and

19  had its principal place of business in Wilmington, Ohio (*id.*); (4) the vast majority of R&L's

20  corporate officers work out of R&L's corporate headquarters located in Wilmington, Ohio (*id.* ¶

21  4); and (5) over twenty corporate executives/officers work out of the corporate headquarters in

22  Wilmington, Ohio (*id.* ¶ 5).  Though Plaintiff characterizes these statements as "vague and

23  conclusory," the Court disagrees: they point to Ohio as the site of direction and control.

24  　　　　Curiously, once faced with Plaintiff's motion to remand, Defendant opted not to submit

25  evidence responsive to this aspect of the jurisdictional challenge in addition to what it had already

26  submitted with the Notice to Remand.  While the choice not to do so strikes the Court as an odd

27  one – with such evidence, it seems that Defendant could have more conclusively confronted

28  Plaintiff's arguments – Defendant maintains in its Opposition that "the Brake Declaration . . .

United States District Court
Northern District of California

1    easily refutes Plaintiff's assertions, and unequivocally establishes that the place of incorporation

2    and the 'nerve center' for R&L is in Ohio."  MTR Opp. at 13.  The Court ultimately agrees.  The

3    Brake Declaration and the Notice of Removal support the conclusion that R&L's officers "direct,

4    control, and coordinate the corporation's activities" from that location, and consequently that

5    Defendant's principal place of business is Ohio.  While it does not drive the analysis, the Court

6    does not find it *irrelevant* that there is no intimation whatsoever in Plaintiff's papers that

7    *California* could properly be considered Defendant's principal place of business.

8           Accordingly, the Court finds minimal diversity satisfied on the evidence presented.  That

9    said, should further factual development cast doubt on this finding, Plaintiff may re-raise this

10   argument.

11          **ii.    Amount in Controversy**

12          Plaintiff next argues that Defendant failed to establish that Plaintiff's claims put at least $5

13   million in controversy.  Though in the Notice of Removal Defendant estimates the amount in

14   controversy to be $7,625,928.02, including attorneys' fees, based on Plaintiff's second and third

15   causes of action alone (Removal Notice ¶ 32), Plaintiff argues that in calculating that figure,

16   Defendant (1) failed to prove competent evidence concerning the number of class members, the

17   number of workweeks, or class members' average rate of pay, (2) improperly assumed a 20%

18   violation rate in its calculations, and (3) relied on unsubstantiated figures in calculating attorneys'

19   fees.  The Court disagrees, and finds that Defendant has adequately shown that the jurisdictional

20   monetary threshold is satisfied in this case.

21           The following standards guide the Court's review.  "[A] defendant's notice of removal

22   need include only a plausible allegation that the amount in controversy exceeds the jurisdictional

23   threshold."  *Dart*, 574 U.S. at 89; *see also Arias v. Residence Inn*, 936 F.3d 920, 925 (9th Cir.

24   2019) (affirming that "a notice of removal 'need not contain evidentiary submissions'").  If the

25   plaintiff contests those allegations in a motion to remand, however, "the court decides, by a

26   preponderance of the evidence, whether the amount-in-controversy requirement has been

27   satisfied."  *Dart*, 574 U.S. at 88.  The preponderance of the evidence standard means the

28   "defendant must provide evidence establishing that it is 'more likely than not'" that the amount in

controversy exceeds $5 million. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). While "[a] defendant need not make the plaintiff's case for it or prove the amount in controversy beyond a legal certainty[,]" *Harris v. KM Indus., Inc.*, 980 F.3d 694, 701 (9th Cir. 2020), a defendant may not establish federal jurisdiction "by mere speculation and conjecture, with unreasonable assumptions." *Ibarra*, 775 F.3d at 1197. Further, where a defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, "those assumptions cannot be pulled from thin air but need some reasonable ground underlying them." *Id*. at 1199.

The Ninth Circuit has "defined the amount in controversy as the 'amount at stake in the underlying litigation[.]'" *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016) (quoting *Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659, 662 (9th Cir. 2005)). In other words, the amount in controversy "is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). "In that sense, the amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover." *Arias*, 936 F.3d at 927 (emphasis in original); *see also Chavez v. JPMorgan Chase & Co*., 888 F.3d 413, 417 (9th Cir. 2018) (explaining that the amount in controversy includes all amounts "at stake" in the litigation at the time of removal, "whatever the likelihood that [the plaintiff] will actually recover them"). In assessing whether the amount in controversy is "more likely than not" satisfied, courts may consider not only the facts alleged in the complaint, taken as true for purposes of calculating the amount, but also "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (internal quotation omitted).

Based on the allegations and evidence presented in the Notice of Removal and the briefing, the Court concludes that Defendant has adequately alleged and substantiated that the suit involves an amount in controversy that exceeds $5 million. Plaintiff's arguments – which primarily attack the competency of Defendant's evidence and the violation rate it assumes – do not convince the Court otherwise.

//

//

a.  Competency of Evidence

Plaintiff contends that the Brake Declaration, filed in support of its Notice of Removal, is not competent evidence to establish the number of class members, the number of workweeks, or class members' average rate of pay (collectively, the "Employment Figures") at issue in Plaintiff's meal and rest break claims.  MTR at 12–14.  The Court disagrees.

Accordingly to the Brake Declaration, "there are approximately 1,575 full-time employees who were scheduled to work more than six hours a day and worked approximately 101,545 workweeks from October 6, 2020 to October 6, 2023 at an average rate of either $32.09 or $19.82, and 705 part-time employees who were scheduled to work at least five hours a day and worked approximately 18,659 workweeks from October 6, 2020 to October 6, 2023 at an average rate of $19.82."  MTR at 12 (summarizing allegations).  The reliability of these Employment Figures is significant, of course, because they are added and multiplied in various ways to arrive at the ultimate amount in controversy calculation.  Plaintiff's motion argues that these key figures are insufficiently supported for a few reasons.

One line of argument concerns Brake's competency as a declarant, since his declaration fails to demonstrate that he has any "specialized familiarity with human resource and payroll data."  MTR at 13.  Though Plaintiff does not meaningfully grapple with this in his Reply, the Court notes that the Brake Declaration is not the only submission relevant to the question before it.  In response to this aspect of Plaintiff's arguments, Defendant filed additional evidentiary submissions in support of its Opposition to supplement the declarations appended to the Notice of Removal.  Among these supplementary submissions is the declaration of Loree Fauley, Defendant's Director of Human Resources.  Dkt. No. 40-1, Ex. A ("Fauley Decl.").  Fauley, who attests to having "overall operational responsibility for R&L's human resources, personnel, and employee relations functions across the United States" and to being "familiar with R&L's personnel files, employment history, current and historical electronic employment data and records, timekeeping system, and payroll history of R&L's employees," states that the data relied upon and cited to in the Brake Declaration is correct.  *Id*. ¶ 4.  Fauley also provides estimates based on his *own* review of R&L's human resources records (including those derived from an

8

1    electronic timekeeping and payroll software system called Kronos) of the Employment Figures.

2    *Id*. ¶¶ 5–7.  These estimates are entirely consistent with those contained in the Brake Declaration.

3    So to the extent that Plaintiff's arguments are premised upon Brake's incompetence as a declarant

4    given his supposed lack of familiarity with human resources and payroll data, those arguments are

5    mooted by the Fauley Declaration.  Fauley is a human resources executive who, in his declaration,

6    attests to basic facts based on his normal business responsibilities and his personal review of

7    Defendant's business records.  His position and expertise make him qualified to furnish sufficient

8    foundation for the Employment Figures in question, and Plaintiff does not argue to the contrary in

9    his Reply.[2]

10        Second, Plaintiff contends that the Employment Figures are not reliable because Defendant

11    did not furnish the "supporting business records, spreadsheets, or other documents" from which

12    they were drawn.  MTR at 12.  This argument is unavailing.  "There is no need, under the

13    circumstances presented, for Defendant to provide the business records themselves."  *Black v. T-*

14    *Mobile USA, Inc*., No. 17-cv-04151-HSG, 2017 WL 5257110, at *4 (N.D. Cal. Nov. 2, 2017); *see*

15    *also Lewis*, 627 F.3d at 397, *Altamirano v. Shaw Indus., Inc.*, No. C-13-0939 EMC, 2013 WL

16    2950600, at *10 (N.D. Cal. June 14, 2013) (rejecting argument that the defendants had to produce

17    records for precise calculations because "requiring Defendants to produce this information would

18    amount to requiring them to prove up Plaintiff's case on the merits").  It is instead enough, at this

19    stage, for Defendant to submit declarations with sufficient foundation, which it has.  *Id*.

20        Third, and relatedly, Plaintiff repeatedly claims that the Employment Figures were derived

21    from hearsay documents and cannot be relied upon.  MTR at 13.  In fact, Plaintiff dedicates nearly

22    all of his Reply to arguing that even *had* Defendant provided the documents on which it relied to

23    calculate the Employment Figures as he (incorrectly) argued it must, Defendant would be no better

24    off because "the documents would be inadmissible hearsay with no exception."  MTR Reply at 11.

25

26    [2] Surprisingly, Plaintiff's Reply does not even *address* how the Fauley Declaration impacts the
analysis, and instead doubles down on the same argument that "the Brake declaration alone is not

27    sufficient to establish that the amount in controversy exceeds $5 million . . . ."  MTR Reply at 11.
But the Court is not constrained to considering just the Notice of Removal and any associated

28    evidentiary submissions; it can also consider post-removal filings made to establish the amount in
controversy once challenged, such as the Fauley Declaration.

United States District Court
Northern District of California

1    Plaintiff advances this line of argument without pointing the Court to any binding authority

2    requiring that Defendant's evidence be admissible – perhaps because "[t]here is no requirement . .

3    . that evidence be in admissible form on a motion to remand, so long as it is reliable and relevant

4    and could be made admissible at trial."  *Cabrera v. S. Valley Almond Co., LLC*, No.

5    121CV00748AWIJLT, 2021 WL 5937585, at *4 (E.D. Cal. Dec. 16, 2021).  Plaintiff has not

6    demonstrated that the figures could not be made admissible, and the Court does not independently

7    find that possibility foreclosed.

8            Finally, Plaintiff argues that Defendant is improperly "silent as to its methods and

9    calculations for determining average hourly rates," with a citation to *Weston v. Helmerich &*

10   *Payne Int'l Drilling Co.*, No. 1:13-cv-01092-LJO-JLT, 2013 WL 5274283, at *5–6 (E.D. Cal.

11   Sept. 17, 2013).  MTR at 13.  This Court previously explained why it found *Weston* unpersuasive

12   in a different case brought by Plaintiff's firm, and will not repeat its reasoning here.  *See Moore v.*

13   *Addus HealthCare, Inc.*, No. 19-CV-01519-HSG, 2019 WL 3686584, at *3 (N.D. Cal. Aug. 7,

14   2019) ("[*Weston*] appears to be an outlier . . . . The overwhelming majority of courts – including

15   this one – have considered reasonable averages like Defendants' in evaluating whether CAFA's

16   amount-in-controversy requirement is met.").

17           Ultimately, the Court is satisfied that Defendant, between the Notice of Removal and the

18   supplementary evidentiary submissions, has adduced evidence that is relevant, reliable, and

19   undergirded by sufficient foundation to adequately support the Employment Figures relied upon in

20   Defendant's amount in controversy calculations.

21                   b.   Violation Rate

22           Next, Plaintiff argues that "there is no basis in evidence" for Defendant to use "a 20%

23   violation rate for both meal and rest breaks, for every single putative class member, for every

24   single week worked" in calculating an estimate for the amount in controversy.  MTR at 14.  The

25   Court disagrees.

26           A defendant's assumptions used to calculate an amount in controversy must contain "some

27   reasonable ground underlying them."  *Arias*, 936 F.3d 920 at 925 (citing *Ibarra*, 775 F.3d at

28   1199).  Defendant argues that where Plaintiff "never limits the number of violations in any way"

and instead alleges "policies and practices" and a "pattern and practice" of conduct resulting in alleged injury to himself and every other hourly, non-exempt employee during the relevant period, it has a reasonable ground to assume a 20% violation rate for Plaintiff's meal and rest break claims.[3]  MTR Opp. at 24–25.  The Court agrees: "courts in the Ninth Circuit have frequently held a violation rate between 20% and 60% to be reasonable when the plaintiff claims a 'pattern and practice' of violations."  *Sanchez v. Abbott Lab'ys*, No. 2:20-CV-01436-TLN-AC, 2021 WL 2679057, at *4 (E.D. Cal. June 30, 2021); *see also, e.g.*, *Garza v. Brinderson Constructors, Inc.*, 178 F. Supp. 3d 906, 911–12 (N.D. Cal. 2016) (assumption of one violation per week was reasonable where plaintiff alleged "policy or practice" of meal and rest break violations); *Mackall v. Healthsource Glob. Staffing, Inc.*, No. 16-CV-03810-WHO, 2016 WL 4579099, at *4 (N.D. Cal. Sept. 2, 2016) (same).

Plaintiff argues that with respect to the meal and rest break claims, he has only alleged that Defendant "engaged in a pattern or practice of wage abuse" and that this "pattern and practice *involved* . . . failing to pay [employees] . . . for missed meal period and rest breaks."  MTR Reply at 14 (citing AC ¶ 25) (emphasis added).  He argues that this is distinct from alleging the existence of "'uniform policies, practices, and procedures' that caused violations of the California meal and rest period law."  *Id.* at 15.  But regardless, the Court does not find it unreasonable for Defendant to assume – in the absence of other limiting allegations – pervasive noncompliance with meal and rest break laws (as reflected by the 20% violation rate) as part of Defendant's "pattern and practice" of wage abuse.

Given that the Court finds Defendant's assumption of a 20% violation rate reasonable based on the allegations in the AC, it considers Defendant's calculations concerning the amount in controversy put forward in the Notice of Removal and accompanying Brake Declaration.  Based on the Employment Figures and the 20% violation rate, Defendant maintains that the amount in controversy for Plaintiff's meal period claim is $2,865,460.52, and that the amount in controversy for the rest period claim is $3,235,281.90, for a total combined amount in controversy of

_____

[3] Practically speaking, a 20% violation rate equates to assuming a violation of one of five meal periods and one of five rest breaks per 5-day work week.

1    $6,100,742.42.  Brake Decl. ¶¶ 8, 10.

2          The Court finds $6.1 million a reasonable estimate of the amount "at stake" in Plaintiff's

3    meal and rest break claims, and one that satisfies the jurisdictional threshold.  Moreover, the Court

4    observes that this estimate likely undercounts the actual amount in controversy, perhaps

5    significantly.  For one, Defendant's amount-in-controversy calculations concerning Plaintiff's

6    meal and rest break claims rely on a figure for the total number of affected employees that is

7    derived from three years of data rather than four.  MTR Opp. at 27 n.14.  In other words,

8    Defendant excludes potential additional class members employed in the first year (from October 6,

9    2019-October 6, 2020) of the four-year statute of limitations alleged in the complaint, and bases its

10   calculations on the estimated number of total employees working between October 6, 2020 to

11   October 6, 2023 only.  *Id*.  Additionally, Defendant's estimated amount in controversy crosses the

12   jurisdictional threshold without even factoring in attorneys' fees.  While the parties dispute what

13   size award may reasonably be assumed, there cannot be any doubt that *some* attorneys' fees may

14   be properly included in the amount-in-controversy calculation, and that any calculation that does

15   not include that sum is an undercount of the total amount in controversy.[4]  Finally, and most

16   significantly, Plaintiff's complaint alleges eight other causes of action aside from the meal and rest

17   break claims used to support Defendant's amount in controversy allegations.  In its Opposition,

18   Defendant gives a sense of what tallying up the additional claims might mean for valuing the

19   entire case.  For instance, Defendant argues that consideration of just two other causes of action –

20   the unpaid overtime and minimum wage claims – also yields an amount in controversy exceeding

21   $5 million, even when (1) using the lowest minimum wage rate ($13/hour) of the relevant time

22   frame and (2) relying on a low estimate for the total number of affected employees.  *See* MTR

23   Opp. at 27–30; Fauley Decl. ¶¶ 5, 7, 8; Dkt. No. 40-2, Ex. B ("McDonald Decl.").

24         Based on these considerations, the Court concludes that Defendant has satisfied its burden

25

26   ─────────────────────

27   [4] Plaintiff argues that it is unreasonable for Defendant to assume a 25% attorneys' fee award without greater evidentiary support.  However, since the Court finds that Plaintiff's rest and meal break claims alone place more than $5 million in controversy, it need not consider whether Defendant's estimated attorneys' fees are reasonable for purposes of the amount-in-controversy requirement.

28

1    to establish that the amount in controversy exceeds $5 million in this case, and rejects Plaintiff's

2    attempt to impose a heavier evidentiary burden on the amount in controversy showing than the

3    prevailing preponderance of the evidence standard demands.

4                                              * * * * *

5           Because the Court finds that it has jurisdiction under CAFA, it **DENIES** Plaintiff's motion

6    to remand the case.  Dkt. No. 33.

7    **III.    MOTION TO DISMISS**

8           Defendant moves to dismiss all of Plaintiff's claims and class allegations as inadequately

9    pled under Rule 12(b).  Dkt. No. 37.  The Court will **GRANT** the motion.

10          **A.    Legal Standard**

11          Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain

12   statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A

13   defendant may move to dismiss a complaint for failing to state a claim upon which relief can be

14   granted under Rule 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the

15   complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."

16   *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule

17   12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible

18   on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible

19   when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that

20   the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

21          In reviewing the plausibility of a complaint, courts "accept factual allegations in the

22   complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

23   *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nevertheless,

24   courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of

25   fact, or unreasonable inferences."  *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

26   2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

27          Even if the court concludes that a 12(b)(6) motion should be granted, the "court should

28   grant leave to amend even if no request to amend the pleading was made, unless it determines that

the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203

F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

### B.    Request for Judicial Notice

Before turning to the substance of Defendant's motion, the Court addresses Defendant's

request for judicial notice.  Dkt. No. 38 ("RJN").

In *Khoja v. Orexigen Therapeutics*, the Ninth Circuit clarified the judicial notice rule and

incorporation by reference doctrine.  *See* 899 F.3d 988 (9th Cir. 2018).  Under Federal Rule of

Evidence 201, a court may take judicial notice of a fact "not subject to reasonable dispute because

it … can be accurately and readily determined from sources whose accuracy cannot reasonably be

questioned." Fed. R. Evid. 201(b)(2).  Accordingly, a court may take "judicial notice of matters of

public record," but "cannot take judicial notice of disputed facts contained in such public records."

*Khoja*, 899 F.3d at 999 (citation and quotations omitted).  The Ninth Circuit has clarified that if a

court takes judicial notice of a document, it must specify what facts it judicially noticed from the

document. *Id*. at 999.  Further, "[j]ust because the document itself is susceptible to judicial notice

does not mean that every assertion of fact within that document is judicially noticeable for its

truth." *Id*.  As an example, the Ninth Circuit held that for a transcript of a conference call, the

court may take judicial notice of the fact that there was a conference call on the specified date, but

may not take judicial notice of a fact mentioned in the transcript, because the substance "is subject

to varying interpretations, and there is a reasonable dispute as to what the [document] establishes."

*Id*. at 999–1000.

Here, Defendant requests that the Court take judicial notice of two judicial filings

discussed in its motion: (1) an order granting final approval of the Class Action Settlement entered

in *Miranda v. R&L Carriers Shared Services*, Case No. 2:18-cv-10063-SVW-(JCx) (C.D. Cal) on

February 21, 2020, and (2) the Joint Stipulation of Class Action Settlement Order filed on January

30, 2020 in the same case.  *See* RJN at 2.  Defendant relies on these filings to argue that the release

contained in the *Miranda* settlement – "which bars all wage and hour-type claims against R&L

and its 'affiliated entities' brought by *Miranda* class members or representatives, defined as

California 'drivers or combo workers' of R&L, from August 14, 2014 through October 15, 2019"

1   – has implications for the viability of Plaintiff's class definition.  MTD at 30.  Specifically,

2   Defendant argues that Plaintiff's class claims should be stricken and dismissed to the extent such

3   claims include *Miranda* settlement class members.  *Id.*  These publicly available legal filings are

4   not subject to reasonable dispute, and the Court will accordingly grant Defendant's request for

5   judicial notice of them.  However, in so doing, the Court simply notices the existence and contents

6   of the filings, but does not adopt any legal conclusions that Defendant asserts arise from them.

7       **C.   Discussion**

8           i.   <u>First and Fourth Causes of Action: Payment of Minimum and Overtime Wages</u>

9       Plaintiff alleges that Defendant failed to pay all overtime and minimum wages due to him

10  and the putative class under California Labor Code sections 510, 1198, 1194, 1197, and 1197.1.

11  Defendant contends that these claims are too thinly pled.  MTD at 16–19.  The Court agrees.

12      Plaintiff makes allegations relevant to his First and Fourth causes of action throughout the

13  complaint.  *See* AC ¶¶ 19, 24–27, 32, 38–40, 43 49, 51–59, and 80–85.  Of these, the most detailed

14  allegations are the following:

15  • "Defendants failed to use the shift differential pay/commissions/non-discretionary

16      bonuses/non-discretionary performance pay to calculate the regular rate of pay used to

17      calculate the overtime rate for the payment of overtime wages."  AC ¶ 27.[5]

18  • "Plaintiff and the other class members worked in excess of eight (8) hours in a day,

19      and/or in excess of forty (40) hours in a week, including working off the clock and/or

20      overtime at the direction of Defendants, such as completing deliveries and pick-ups and

21      communicating with supervisors to provide work-related updates." *Id.* ¶ 56.

22  • "Defendants intentionally and willfully failed to pay overtime wages owed to Plaintiff

23      and the other class members.  Plaintiff and other class members did not receive

24      overtime compensation at one and one-half times their regular rate of pay for all hours

25      spent performing job duties in excess of (8) hours in a day or forty (40) in a week or for

26      the first eight (8) hours worked on the seventh day of work. As an example,

27  _____

28  [5] Plaintiff's use of the plural "Defendants" throughout the Amended Complaint notwithstanding, there is just one defendant in this case: R&L Carriers Shared Services, LLC.

United States District Court
Northern District of California

Defendant's failure to pay overtime wages is reflected in wage statements that Defendant issued to Plaintiff, which show that time worked in excess of 40 hours per week was paid at the base hourly rate instead of at the overtime rate."  *Id.* ¶ 57.

- "Defendants failed to pay minimum wage to Plaintiff and the other class members as required, pursuant to California Labor Code sections 1194, 1197, and 1197.1. Defendants' failure to pay minimum wages included, inter alia, Defendants' effective payment of zero dollars per hour for hours Plaintiff and the other class members worked off-the-clock performing work duties including, but not limited to, completing deliveries and pick-ups and communicating with supervisors to provide work-related updates. Plaintiff spent time performing work duties off-the-clock throughout his employment with Defendants."  *Id.* ¶ 85.

These allegations – which, again, are the most substantial of the relevant pleadings – are simply too bereft of facts to push the allegations concerning his unpaid overtime and minimum wage claims from the realm of the possible into the plausible.  *See Landers v. Quality Communications, Inc*, 771 F.3d 638, 646 (9th Cir. 2014) ("Although these allegations 'raise the possibility' of undercompensation . . . a possibility is not the same as plausibility.").  Under *Landers*, "[a]lthough plaintiffs . . . cannot be expected to allege 'with mathematical precision[]' the amount of overtime compensation owed by the employer, they should be able to allege facts demonstrating there was at least one workweek in which they worked in excess of forty hours and were not paid overtime wages," or in which they were "not paid minimum wages." 771 F.3d 638, 646 (9th Cir. 2014).[6]  Where a complaint lacks "sufficient detail about the length and frequency of [plaintiff's] unpaid work to support a reasonable inference that [he] worked more than forty hours in a given week[,]" it will not survive a motion to dismiss.  *Id.* (citation omitted).

Plaintiff's allegations do not approach pointing to a "given workweek" in which Plaintiff worked in excess of forty hours without being paid overtime or minimum wages, or the "length

---

[6] "Although the claims in Landers were brought under the federal Fair Labor Standards Act, courts regularly apply the same pleading standard to claims brought in federal court under the California Labor Code." *Verduzco v. French Art Network LLC*, No. 23-CV-00771-BLF, 2023 WL 4626934, at *2 (N.D. Cal. July 18, 2023) (citing cases).

and frequency" of his unpaid work.  In fact, Plaintiff does not allege anything about his role or roles while employed by Defendant, let alone any specific instances of incorrectly tabulated wages.  This is insufficient to state a claim.[7]  *See Williams v. Securitas Sec. Servs. USA, Inc.*, No. 23-CV-01863-LB, 2023 WL 5310937, at *11 (N.D. Cal. Aug. 16, 2023) (N.D. Cal. Aug. 16, 2023); *Verduzco*, 2023 WL 4626934 at *3.  Though Plaintiff insists that his allegations contain "a litany" of facts, this may be because he misapprehends what constitutes a legal conclusion.  While, as Plaintiff recognizes, the theoretical allegation that "Defendant is liable for section 510 and section 1194 violations" qualifies as legal conclusion (MTD Opp. at 19), Plaintiff's actual allegation that, for instance, Defendant "failed to compensate [Plaintiff and other class members] for all hours worked" is no different.  Where there are no additional factual details alleged that enable the Court to find this conclusion plausible, it is entirely conclusory.  While Plaintiff need not "identify a calendar week or particular instance where he was denied wages," he must "plead specific facts that raise a plausible inference that such an instance actually occurred."  *Ramirez v. HV Glob. Mgmt. Corp.*, No. 21-cv-09955, 2022 WL 2132916, at *3 (N.D. Cal. June 14, 2022).[8]

Because he has not done so, these two claims are **DISMISSED**.

### ii. Second and Third Causes of Action: Meal and Rest Break Claims

Plaintiff alleges that Defendant failed to afford him and other members of the putative class all earned overtime and meal and rest breaks in violation of California Labor Code sections 226.7 and 512(a), and the Industrial Welfare Commission Wage Orders.  Defendant contends that like the overtime and minimum wage claims, these are inadequately pled.  MTD at 19–21.  The Court agrees.

---

[7] To the extent that Plaintiff attempts to suggest that the *Twombly/Iqbal* pleading standards do not apply to his claims (MTD Opp. at 15), he is incorrect.  "*Twombly* and *Iqbal* apply to all civil claims in federal court, and thus federal courts apply the *Twombly/Iqbal* standard as delineated in *Landers* to minimum-wage, overtime, meal-breaks, and rest-period claims under the California Labor Code."  *Erblich v. Sasaki*, No. 23-CV-01265-LB, 2023 WL 4186007, at *4 (N.D. Cal. June 25, 2023).

[8] Defendant wrongly suggests that Plaintiff's counsel has acted improperly by once again raising the same argument that a court in this district previously rejected.  MTD Reply at 10 n.3.  While Plaintiff's argument is no more successful this time around than the last, it is not improperly asserted: a district court decision is just persuasive – as opposed to binding – authority on this Court.

United States District Court
Northern District of California

The following represents the most detailed allegations made in connection with Plaintiff's missed meal and rest break claims:

- "Defendants knew or should have known that Plaintiff and the other class members were entitled to receive all meal periods or payment of one additional hour of pay at Plaintiff's and the other class member's regular rate of compensation when a meal period was missed, short, late, and/or interrupted, and they did not receive all meal periods or payment of one additional hour of pay at Plaintiff's and the other class member's regular rate of compensation when a meal period was missed, short, late, and/or interrupted . . . . Plaintiff and the other class members' meal periods were missed, shortened, late and/or interrupted because Defendants required them to perform work duties. Plaintiff did not receive premium payments for meal periods that were not provided."  AC ¶ 29.

- "Defendants failed to provide all requisite uninterrupted meal and rest periods to Plaintiff and the other class members, by, inter alia, requiring employees to perform work duties during their meal and rest periods."  *Id.* ¶ 41.

- "Plaintiff and the other class members who were scheduled to work for a period of time no longer than six (6) hours, and who did not waive their legally mandated meal periods by mutual consent," as well as those "scheduled to work for a period of time in excess of six (6) hours[,] were required to work for periods longer than five (5) hours without an uninterrupted meal period of not less than thirty (30) minutes and/or rest period."  *Id.* ¶¶ 65, 66.

- "During the relevant time period, Defendants required Plaintiff and other class members to work four (4) or more hours without authorizing or permitting a ten (10) minute rest period per each four (4) hour period worked."  *Id.* ¶ 76.

*See also* AC ¶¶ 19, 25, 28, 30, 31, 41, 42, 60–82.

The Court agrees with Defendant that these claims must be dismissed as pled.  "To state a claim for failure to provide required rest or meal periods, [Plaintiff] must at least allege either a specific corporate policy prohibiting those breaks or a specific instance or instances in which he

18

was denied a required break." *Ramirez*, 2023 WL 322888 at *5; *see also, e.g.*, *Guerrero v. Halliburton Energy Servs., Inc.*, No. 1:16-CV-1300-LJO-JLT, 2016 WL 6494296, at *6 (E.D. Cal. Nov. 2, 2016) ("The requirement in *Landers* that a plaintiff must plead a specific instance of alleged wage and hour violations also applies to claims about missed meal and rest periods."). Plaintiff argues that his allegations are sufficient because the California Labor Code does not require Plaintiff "to plead with granular details, for instance, the frequency and duration of every interruption during his meal and/or rest break." MTD Opp. at 20. But Defendant does not move for dismissal because the Complaint lacks *granular* details about *every* supposed violation, but rather because it omits *any* factual details surrounding *any* specific instance of a missed meal or rest break. Recapitulating the statutory standard – which is what Plaintiff does throughout the complaint – is no substitute for pleading a specific instance of meal and rest break violations, or a specific policy prohibiting appropriate meals and break times, which is his burden.[9] The cases that Plaintiff relies on for the proposition that he has met the plausibility standard without so pleading predate *Landers*, and are thus not instructive on what is required to state claims for meal or rest break violations. *See* MTD Opp. at 21 (citing *Montelongo v. RadioShack*, 2009 WL 10672160, at *7 (C.D. Cal. Apr. 6, 2009); *Stagner v. Luxottica v. Retail North America, Inc.*, 2011 WL 3667502, at *6 (N.D. Cal. Aug. 22, 2011)).[10]

Since these claims are not supported by the minimally necessary factual allegations, the Court **GRANTS** Defendant's motion to dismiss them.

//

---

[9] Plaintiff's allegation that Defendant "require[s] Plaintiff and the other class members to remain on Defendants' premises during purported rest periods" does not require a different result. AC ¶ 78. Though Plaintiff argues that this requirement "fails to relieve them of all employer control," the case they cite in support of that proposition – *Augustus v. ABM Sec. Servs.*, Inc., 2 Cal. 5th 257, 270 (2016), *as modified on denial of reh'g* (Mar. 15, 2017) – does not necessarily appear to view such a requirement as dispositive indicia of employer control. In fact, "*Augustus* is explicit that a policy that prohibits employees from leaving the properties during rest periods – without more – 'is not sufficient to establish employer control.'" *Figueroa v. Delta Galil USA, Inc.*, No. 18-CV-07796-RS, 2021 WL 1232695, at *6 (N.D. Cal. Mar. 30, 2021) (citing and quoting *Bowen v. Target Corp.*, 2020 WL 1931278, at *7 (C.D. Cal. Jan. 24, 2020)).

[10] While Plaintiff's citation for *Montelongo v. RadioShack* notes a date of "Apr. 6, 2019," that decision was published in 2009, not 2019. *See Montelongo v. RadioShack*, No. 09-01235 MMM (JTLX), 2009 WL 10672160 (C.D. Cal. Apr. 6, 2009).

United States District Court
Northern District of California

iii.    Fifth Cause of Action: Final Wages at Termination

Plaintiff alleges that Defendant intentionally and willfully failed to timely pay him and other putative class members their unpaid, earned wages upon termination in violation of California Labor Code sections 201 and 202.  As a result, Plaintiff alleges that pursuant to section 203, he and the putative class members are entitled to recover from Defendant the statutory penalty wages for each day they were not paid (up to a thirty day maximum).  Defendant argues that Plaintiff's claim must be dismissed not only because it, like the others, is conclusorily pled, but also because it is predicated on "Plaintiff's other claims for failure to pay overtime wages, minimum wages and missed meal/break periods," which have been dismissed.  MTD at 21.

In connection with Plaintiff's final wages (or "waiting-time") claim, the AC provides:

- "Defendants failed to pay Plaintiff and the other class members all wages owed to them upon discharge or resignation, including earned but unpaid overtime and minimum wages and meal and rest period premiums."  AC ¶ 44.

- "Defendants intentionally and willfully failed to pay Plaintiff and the other class members who are no longer employed by Defendants their wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendants' employ." *Id*. ¶ 91.

- "Plaintiff was not paid at the time of his separation all wages earned and unpaid throughout his employment, including but not limited to, minimum wages and overtime wages for time worked off-the-clock, overtime wages for time worked in excess of 8 hours in a day or 40 hours in a week, and meal and rest period premium payments for short, late, interrupted, and/or missed meal and rest periods."  *Id*. ¶ 92.

*See also* AC ¶¶ 33, 89–95.

The Court agrees with Defendant that Plaintiff's allegations concerning the fifth cause of action are predicated on the sufficiency of Plaintiff's overtime, minimum wage, and meal and rest break claims.  Since those claims have been dismissed, the Court will dismiss this one as well. *See Erblich v. Sasaki*, No. 23-CV-01265-LB, 2023 WL 4186007, at *4 (N.D. Cal. June 25, 2023)

United States District Court
Northern District of California

("The wage-statement and waiting-time-penalties claims fail because they are predicated on the [dismissed] overtime claim."); *Schneider v. Space Sys./Loral, Inc.*, No. C 11-2489 MMC, 2012 WL 476495, at *3 (N.D. Cal. Feb. 14, 2012) (same).

That said, even if the Court considered the claim, the outcome would be no different. Alleging "Defendants intentionally and willfully failed to pay Plaintiff and the other class members who are no longer employed by Defendants their wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendants' employ," AC ¶ 91, is no more than a "formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. The allegations, which parrot the statutory language, simply fail to aver specific facts showing Defendant's failure to pay earned but unpaid wages following Plaintiff's termination. For example, Plaintiff makes no allegations concerning his final paycheck and what was earned but unpaid in it. Accordingly, the allegations provide an insufficient basis for the Court to draw the reasonable inference that Defendants are liable under sections 201–203 for willful misconduct, which constitutes a separate basis for dismissal of this claim.

The Court therefore **GRANTS** Defendant's motion to dismiss Plaintiff's fifth cause of action.

       iv.   <u>Sixth Cause of Action: Timely Payment of Wages During Employment</u>

In addition to alleging that Defendant failed to pay timely wages upon termination, Plaintiff also alleges that Defendant failed to timely pay wages to him and other putative class members *during* their employment in violation of California Labor Code section 204, which establishes that wages must generally be paid on a semimonthly schedule. Defendant argues that Plaintiff fails to plead sufficient factual support for this claim. MTD at 22–23. The Court agrees.

Plaintiff makes the following allegations in support of his timely wage claim:

- "Plaintiff and the other class members did not receive payment of all wages, including earned but unpaid overtime and minimum wages and meal and rest period premiums, within any time permissible under California Labor Code section 204." AC ¶ 34.

- "Defendants intentionally and willfully failed to pay Plaintiff and the other class

United States District Court
Northern District of California

1    members all wages due to them, within any time period permissible under

2    California Labor Code section 204."  *Id.* ¶ 100.

3    *See also* AC ¶¶ 45, 96–102.

4    These allegations do not provide any facts that make plausible the contention that Plaintiff

5    was not paid wages within the *timeframe* set forth in section 204.  The notion that Defendant

6    failed to pay Plaintiff and the class "within any time period permissible under" section 204 is no

7    more than a legal conclusion.  Given the dearth of allegations about whether payments occurred,

8    as required, between certain days of the month, it appears to the Court that the thrust of this cause

9    of action is, like the last, about the fact of the unpaid wages.  But section 204 "simply regulates the

10   timing of wage payments and does not provide for the payment of any particular type of wages or

11   create any substantive right to wages."  *Frausto v. Bank of Am., Nat'l Ass'n*, No. 18-CV-01983-

12   MEJ, 2018 WL 3659251, at *10 (N.D. Cal. Aug. 2, 2018).

13   The Court finds this claim, like the others, inadequately pled, and will **GRANT**

14   Defendant's motion to dismiss it.

15         v.    Seventh Cause of Action: Accurate and Compliant Wage Records

16   Plaintiff alleges that Defendants failed to provide him with accurate and compliant wage

17   statements in violation of California Labor Code section 226(a), which requires "an accurate

18   itemized statement in writing" showing nine specific items.  Defendant argues that Plaintiff fails to

19   plead sufficient facts to support his claim.  MTD at 23–24.  The Court agrees.

20   Relative to this claim, Plaintiff alleges:

21   •    "Defendants knew or should have known that Plaintiff and the other class members

22        were entitled to receive complete and accurate wage statements in accordance with

23        California law, but, in fact, they did not receive complete and accurate wage

24        statements from Defendants."  AC ¶ 35.

25   •    "Defendants have intentionally and willfully failed to provide Plaintiff and the

26        other class members with complete and accurate wage statements. As the employer

27        willfully required work to be performed off-the-clock and failed to provide,

28        authorize, and/or permit compliant meal and rest periods or to pay all premium

wages owed for such failure, Defendants had the necessary information to provide wage statements that accurately reflected the total number of hours worked and the actual gross and net wages earned, yet failed to do so on a systematic basis and instead provided wage statements that did not reflect overtime, including time worked off-the-clock or all meal and rest premiums earned." *Id.* ¶ 105.

- "Because Plaintiff and the other class members' wage statements did not reflect the accurate number of hours worked, Plaintiff and the putative class members were unable to determine the total amount of hours they worked, were unable to determine the total amount of compensation they were owed and were unable to verify they were paid the proper amount." *Id.* ¶ 106.

*See also* AC ¶¶ 46, 103–109.

These allegations fall short of alleging a plausible claim.  To establish liability for a section 226(a) violation, an employee must demonstrate: "(1) a failure to include in the wage statement one or more of the required items from Section 226(a); (2) that failure was 'knowing and intentional'; and (3) a resulting injury." *Frausto*, 2018 WL 3659251 at *7 (quoting *Brewer v. Gen. Nutrition Corp.*, 2015 WL 5072039, at *5 (N.D. Cal. Aug. 27, 2015)).  "[A] knowing and intentional failure must be more than an isolated and unintentional payroll error due to a clerical or inadvertent mistake." *Willner v. Manpower, Inc.*, 35 F. Supp. 3d 1116, 1131 (N.D. Cal. 2014) (quoting Cal. Lab. Code § 226(e)(3)).

Proceeding in reverse order, the Court agrees with Plaintiff that his pleadings satisfy the third element: injury.  "[I]njuries from a failure to provide an accurate pay statement include the 'possibility of not being paid overtime, employee confusion over whether they received all wages owed them, difficulty and expense involved in reconstructing pay records, and forcing employees to make mathematical computations to analyze whether the wages paid in fact compensated them for all hours worked.'" *Suarez v. Bank of Am. Corp.*, No. 18-CV-01202-MEJ, 2018 WL 3659302, at *12 (N.D. Cal. Aug. 2, 2018)) (internal citation omitted).  Here, Plaintiff alleges that he and the other class members were "unable to determine the total amount of hours they worked, were unable to determine the total amount of compensation they were owed and were unable to verify

23

they were paid the proper amount" without engaging in "discovery and mathematical computations in order to reconstruct the missing information."  AC ¶¶ 105, 106.  The Court is unpersuaded by Defendants' contention that an injury does not arise where an employee struggles to discern what wages are *owed*, as opposed to *paid*.  MTD Reply at 17–18.  The holding of a recent trial court case notwithstanding, the California Supreme Court in *Naranjo v. Spectrum Sec. Servs.*, *Inc.* affirmed that employees had "clearly suffered an injury since they could not determine from the wage statements the correct wages to which they were entitled."  13 Cal. 5th 93, 120 (2022).  Plaintiff, having alleged just that, has thus sufficiently articulated an injury at this stage.

As to the second "knowing and intentional" element, some courts hold that simply reciting that the failure to provide accurate wage and hour statement was "knowing and intentional" is sufficient, whereas others require more.  *Compare Suarez*, 2018 WL 3659302 at *11 ("Plaintiff alleges Bank of America 'knowingly failed to provide . . . accurate wage and hour statements[.]' . . . . Courts generally find this type of allegation sufficient.") *with Soratorio v. Tesoro Ref. & Mktg. Co., LLC*, No. CV171554MWFRAOX, 2017 WL 1520416, at *8 (C.D. Cal. Apr. 26, 2017) ("Plaintiff has failed to plead any facts showing that any supposed violations of this section by Defendants were knowing or intentional.").  On the main, courts in *this* district appear to accept general allegations as to defendant's state of mind.  *See Suarez*, 2018 WL 3659302 at *11 (citing cases).  This Court has held, for instance, that "to satisfy the 'knowing and intentional' requirement, a plaintiff 'need only plead that defendants knew of the facts underlying the alleged violation, and need not plead that defendants had knowledge that their alleged actions were unlawful.'"  *Perez v. Performance Food Grp., Inc.*, 2016 WL 1161508, at *3 (N.D. Cal. Mar. 23, 2016).  Plaintiff has done so here by alleging that "Defendants had the necessary information to provide wage statements that accurately reflected the total number of hours worked and the actual gross and net wages earned, yet failed to do so on a systematic basis and instead provided wage statements that did not reflect overtime, including time worked off-the-clock or all meal and rest premiums earned."  AC ¶ 105.  At this stage in the proceedings, the Court finds this sufficient.

That notwithstanding, the claim cannot proceed as pled.  The Court finds that Plaintiff's allegations as to the first element – Defendant's failure to provide accurate payroll statements – do

24

not rise to the level of stating a claim.  Plaintiff has not pointed to any specific deficient statement, or identified any other facts that separate these allegations from boilerplate recitals of statutory language.  *See, e.g.*, *Nicholas v. Uber Techs., Inc.*, No. 19-CV-08228-PJH, 2020 WL 7173249, at *7 (N.D. Cal. Dec. 7, 2020) (dismissing section 226(a) claim because "plaintiffs fail to identify the deficient statements at issue"); *Soratorio*, 2017 WL 1520416 at *8 (same).  While Plaintiff argues that he has satisfied his burden by specifying why the wage statements were supposedly inaccurate (i.e. their failure to reflect "overtime, including time worked off-the-clock or all meal and rest premiums earned"), the Court does not find that argument persuasive where the allegations underpinning his overtime, meal and rest break claims were similarly devoid of factual support.

The Court therefore **GRANTS** Defendant's motion to dismiss Plaintiff's this claim.

### vi.   Eighth Cause of Action: Accurate and Compliant Payroll Records

Plaintiff alleges that Defendant failed to maintain accurate payroll records in violation of California Labor Code section 1174, which requires that employers keep payroll records at a central location accessible to employees for at least three years.[11]  *See* Lab. Code § 1174(d).  Any employer who willfully fails to maintain such records is subject to a penalty.  *Id.* § 1174.5.  Defendant argues that Plaintiff's allegations do nothing more than recite the elements of the statute, and must be dismissed for lack of factual support.  MTD at 25.  The Court agrees.

As to this claim, Plaintiff alleges that:

- "Defendants failed to keep complete or accurate payroll records for Plaintiff and the other class members."  AC ¶ 47.

- "Defendants had the necessary information to maintain accurate and complete payroll records wage that accurately reflected the total number of hours worked and the actual gross and net wages earned, yet failed to do so on a systematic basis and instead maintained inaccurate and incomplete payroll records that did not reflect the time worked off-the-clock or all meal and rest premiums earned."  *Id.* ¶ 112.

*See also* AC ¶¶ 36, 110–114.

---

[11] Plaintiff's pleadings misstate that the provision requires that records be maintained for no "less than two years."  AC ¶ 111.  The minimum is three.  *See* Cal. Lab. Code § 1174(d).

United States District Court
Northern District of California

Defendant is correct that these allegations do not aver any "facts regarding the payroll records at all, other than to recite the statute accompanied by purely conclusory allegations." MTD Reply at 19.  In short, the allegations do not "demonstrate beyond a highly speculative level that [the employer] may actually be engaged in unlawful record-keeping practices." *Nicholas*, 2020 WL 7173249 at *8 (quoting *Kemp v. Int'l Bus. Machines Corp.*, 2010 WL 4698490, at *4 (N.D. Cal. Nov. 8, 2010)).

The Court accordingly **GRANTS** Defendant's motion to dismiss Plaintiff's claim arising under section 1174(d).[12]

vii.   Ninth Cause of Action: Indemnify Necessary Business Expense

Plaintiff alleges that Defendant failed to indemnify him for necessary business expenses in violation of California Labor Code sections 2800 and 2802.  Defendant argues that Plaintiff's allegations as to this claim, like all the others, are insufficient.  MTD at 25–26.  The Court agrees.

Plaintiff alleges that:

- "Defendants failed to reimburse Plaintiff and the other class members for all necessary business-related expenses and costs, including and not limited to, the use of personal phones for business-related purposes." AC ¶ 37.

- "Plaintiff and the other class members incurred necessary business-related expenses and costs in direct consequence of the discharge of their job duties or in direct consequence of their obedience to the directions of Defendants throughout the duration of their employment that were not fully reimbursed by Defendants, including, but not limited to, the use of personal phones for business-related purposes."  *Id*. ¶ 117.

*See also* AC ¶¶ 48, 115-119.

---

[12] While Defendant does not raise the argument, courts in this district have held that section 1174(d) does not contemplate a private right of action, which would furnish an additional and independent basis for dismissing this claim.  *See, e.g.*, *Huynh v. Jabil Inc.*, No. 22-CV-07460-WHO, 2023 WL 1802417, at *6 (N.D. Cal. Feb. 7, 2023) (citing cases).  While that holding does not foreclose Plaintiff from bringing a claim under California's Private Attorney General Act, Plaintiff has not done so here, nor has he pled that he has exhausted the relevant administrative remedies.  In future rounds of pleading and briefing, the parties should address this.

These allegations simply parrot the statutory language at issue, and do not plead any facts showing, as Plaintiff must, that "(i) [he] made expenditures or incurred losses; (ii) the expenditures or losses were incurred in direct consequence of the employee's discharge of his or her duties, or obedience to the directions of the employer; and (iii) the expenditures or losses were reasonable and necessary." *Reyna v. WestRock Co.*, No. 20-CV-01666-BLF, 2020 WL 5074390, at *11 (N.D. Cal. Aug. 24, 2020) (internal quotation and citation omitted).  It is not sufficient for Plaintiff to allege that he used personal phones for business purposes where he otherwise "provides no explanation of what and when business expenses were incurred, why they were necessary, and how R&L was notified."  MTD Reply at 20.

As with the others before it, this claim must be **DISMISSED** for want of factual support.

viii.    Tenth Cause of Action: Unfair Competition

Plaintiff's Tenth cause of action is for violations of the unlawful prong of California's Unfair Competition Law ("UCL").  Cal. Bus. & Prof. Code § 17200.  But because the Court concludes that each of Plaintiff's other claims for relief fail as a matter of law, his UCL claim – which relies on predicate legal violations – must fail as well.  *See Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1028 (N.D. Cal. 2012) (Where "other claims fail, [the] UCL claims premised on 'unlawful' acts ha[ve] no basis and must also fail." (citations omitted)).  The Court accordingly **GRANTS** Defendant's motion to dismiss on this ground.

ix.    Class Allegations

Lastly, Defendant argues that the class allegations in Plaintiff's complaint should be dismissed because they are "conclusory, devoid of facts, and 'stop[] short of the line between possibility and plausibility of entitlement to relief."  MTD at 27 (quoting *Iqbal*, 556 U.S. at 678) (alterations in original).  This outcome is also warranted, Defendant argues, because Plaintiff's class definition improperly includes members who have already released their claims in a separate lawsuit, as well claims that are time-barred.  *Id*. at 29.

In his Opposition, Plaintiff does not even address Defendant's argument concerning the sufficiency of his class allegations.  Whether or not the Court construes that omission as a concession, the Court independently agrees with Defendant that dismissal is warranted here, where

United States District Court
Northern District of California

Plaintiff fails to plead any facts alleging how "[his] experiences related in any way to any . . . other individuals' experiences." *Bush v. Vaco Tech. Servs., LLC*, No. 17-CV-05605-BLF, 2018 WL 6308193, at \*3 (N.D. Cal. Dec. 3, 2018).  While generally "'compliance with Rule 23 is not to be tested by a motion to dismiss for failure to state a claim[,]'" "district courts do dismiss class allegations on a 12(b)(6) motion, applying the *Twombly/Iqbal* standard, where the complaint lacks any factual allegations and reasonable inferences that establish the plausibility of class allegations." *Mish v. TForce Freight, Inc.*, No. 21-CV-04094-EMC, 2021 WL 4592124, at \*8 (N.D. Cal. Oct. 6, 2021).  In his amended complaint, Plaintiff does not even allege his job title or responsibilities as an employee of Defendant, let alone explain how his experiences as an R&L employee are representative of the experiences of other employees working in not only similar but also wholly different roles.  Though Defendant reveals in its Notice of Removal that Plaintiff worked as a driver for Defendant, there is absolutely nothing in the pleadings that enables the Court to find plausible that Plaintiff's experiences as a driver are at all typical of "[a]ll current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from April 11, 2019, to final judgment and who reside in California."  AC ¶ 13.  Given this, the Court concludes that this is one of the rare cases where Plaintiff's class allegations are so conclusory that "'forc[ing] Defendant on a deep-sea charter [of class discovery]'" would be prejudicial.[13]  *Mish*, 2021 WL 4592124 at \*8 (quoting *Zamora v. Penske Truck Leasing Co., L.P.*, 2021 WL 809403, at \*3 (C.D. Cal. 2021)).

Accordingly, the Court **DISMISSES** Plaintiff's class allegations.

---

[13] While Defendant's contentions concerning the statute of limitations appear to have merit, the Court need not resolve them at this time – not only because statute of limitations arguments are generally not resolved on the face of the complaint, but also because Defendant only fully articulated its time bar arguments in the Reply as opposed to the Motion.  Similarly, the Court, having dismissed the class allegations on sufficiency grounds, need not address Defendant's argument that the class definition as proposed improperly includes putative class members whose claims have already been released as a result of the settlement in *Miranda v. R&L Carriers Shared Services*, which covered "all individuals who were employed by [R&L] as non-exempt employees referred to as drivers or combo workers within the state of California at any time during the period from August 14, 2014 through October 15, 2019."  Case No. 2:18-cv-10063-SVW-9JCx) (C.D. Cal.).  MTD at 29.  While the Court makes no finding at present as to whether Plaintiff's class definition does in fact improperly include barred claims, in any amended pleading, Plaintiff should take care to define its class and subclasses in a manner that avoids including released or time-barred claims.

United States District Court
Northern District of California

IV.    **CONCLUSION**

The Court **DENIES** Plaintiff's motion for remand, Dkt. No. 33, **GRANTS** Defendant's motion to dismiss, Dkt. No. 37, and **GRANTS** Defendant's request for judicial notice, Dkt. No. 38.  Since the Court cannot conclude that amendment would be futile, dismissal is without prejudice.  Any amended complaint is due within 21 days of this order.

The Court further **SETS** a telephonic case management conference on June 11, 2024, at 2:00 p.m., and **DIRCTS** the parties to submit a joint case management statement by June 4, 2024. All counsel shall use the following dial-in information to access the call:

Dial-In:  888-808-6929

Passcode:  6064255

All attorneys and pro se litigants appearing for a telephonic case management conference are required to dial in at least 15 minutes before the hearing to check in with the courtroom deputy.  For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines.

**IT IS SO ORDERED.**

Dated:   4/23/2024

HAYWOOD S. GILLIAM, JR.
United States District Judge